I want to start with a couple of procedural issues in the case, the first being the scope of the Certificate of Appealability. We have an interesting situation here where Mr. Fletcher raised a claim of prosecutorial misconduct that was phrased as prosecutorial misconduct throughout the trial, and he listed various examples of prosecutorial misconduct. And for reasons that aren't clear, the Court granted a Certificate of Appealability on one example out of that much larger prosecutorial misconduct claim. And so I briefed the entire prosecutorial misconduct claim because it seemed to me anomalous to have a Certificate of Appealability on something that was never a freestanding issue. So I wanted to address if the Court had any issues about the scope of the COA. Otherwise, I will assume that it's on the entirety of the prosecutorial misconduct claim. Well, I'd suggest that you argue the one that's certified, and then you can add on to it the ones that weren't. We may or may not expand the certification, but you can argue it now, and your opponent can argue it, and we may ask for additional briefing on that if we want to reach the full issue. Well, I will say then, honestly, I said in my brief, this was never a freestanding claim, and Mr. Fletcher has never asserted that one question, one question of the officer about whether he believed my client in his wife's testimony was alone enough to grant habeas. It was never asserted that way, and it wouldn't be. This is a case of pervasive prosecutorial misconduct. Well, make the whole argument, and then we'll have your opponent make both his procedural objection and the substantive argument. Well, then I also want to secondarily address a second procedural issue, which was whether there was a procedural bar in this case. The superior court barred this on Dixon grounds, that it could have been raised, the prosecutorial misconduct claim could have been raised on appeal, as did the appellate court. The California Supreme Court did not differentiate between claims and did not differentiate between procedural bar allegations. And this Court has said on Bonk that when the court doesn't distinguish between which claim which bar applies to which claim, it's ambiguous and there's no procedural bar. That would be my position. The second one would be if, in fact, there was any consideration of a procedural bar. This is a situation where Mr. Fletcher was placed in an untenable catch-22. He asked his attorney, his appellate attorney, to raise the prosecutorial misconduct claim. The attorney refused. Mr. Fletcher read the opening brief, saw it wasn't raised, addressed it with his attorney who said file a supplemental brief in the appellate court, so he did so. Then the appellate court says you can't file that because you're represented by counsel, so he asks his counsel again, will you file this, and counsel says no. So he can't get it before the court. As soon as his case is over, he at his first opportunity files a pro per habeas petition that includes this claim. So you can't do much more than what Mr. Fletcher did to get that case, to get this claim before the appellate court. And so if there were to be a procedural bar, he certainly has reasons for having not been able to comply with the rule. And so I would ask that at the very least that this Court do what the district court did and address the merits of the claim and not deal with the procedural bar issue. The third issue I'd like to address is my request to expand the certificate of appealability on the denial of the right to present a defense slash third-party culpability evidence. We have this case where there's no evidence, no physical evidence, no forensic evidence, no eyewitness evidence that ties my client or his wife to the murder. And we have a situation where Jennifer, my client's wife, tells the police that she hears a statement that sounds like it's made by a black man in ebonic-type language. And the prosecutor lambasts her the entire trial that this is a lie, there's no evidence, it's just all made up, part of the plan to frame somebody else for murder or whatever. When in fact there was a black man who was a gang member who had been in prison for a burglary that was committed through a sliding glass door, who lied to the police when he was asked about his whereabouts that night, who there were neighbors who said a number of neighbors who had been accosted by this man that night on the same street on the cul-de-sac street where the murder took place, that he had been aggressively asking for cigarettes, that he was working for an alarm company where he was employed by another gang member, where there was evidence that this gang that he was associated with had a history of committing burglaries in that area and had been doing it through the alarm companies. There was evidence that another neighbor around the time or shortly after the time of the murder who had heard somebody trying to open the door to his house, there was another neighbor who said that their dog had been barking that night around the time of the murder, which was contrary to one neighbor who did testify that there was no dog barking, and none of this evidence was allowed in, none of it. And the standard for admitting third-party culpability is that it have the ability to raise a reasonable doubt. You don't have to prove that the other person did it. So we have a situation where my client's adamant that they did not commit these murders, they both testify, but there's no opportunity to present to the jury that any other plausible scenario when there is one. And on top of that, you have the prosecutor repeatedly telling the jury that this – that Jennifer's statement about hearing this black man is a lie when there's actually evidence that there was a black man who was a gang member on the street at the time of the murder. And so I would ask that there – this is certainly an arguable – raises an arguable to me, an arguable denial of a constitutional right to put on a defense and would assert my request that the Court grant a certificate of appealability on that claim. Finally, as to the – as to the prosecutorial misconduct claim itself, I am not going to address that there's habeas relief entitled for the one question that was asked. I just – I can't argue that with a straight face. But in terms of the totality of the prosecutorial misconduct, I would – I would please ask that the – that somebody on that Court read these trial transcripts. They're long. But this – what this prosecutor did and what this judge allowed the prosecutor to do is appalling. It's – you know, I tried to summarize different aspects of it in the briefing. I would have taken another 100 pages or more if I could recount every objectionable thing that this prosecutor did, what he said, his repeated refusals to listen to the defendant, how he presented himself, the Court not allowing Jennifer's attorney to – to file – to raise objections. It's – it's – I've been doing this for many years, and this was an appalling transcript. And I would just please ask the Court to review the transcript, consider the entire prosecutorial misconduct claim, and to consider the denial of the right to present a defense claim. And I will reserve my remaining time for – if there's any – for rebuttal. Counsel, I think maybe we should hear from the other appellant first and have you answer both arguments at once. Do you have any objection to that? No, I don't have any objection. Thank you. Thank you. Good morning, Your Honors. Tariq Adline on behalf of Jennifer Fletcher. The petition in – the petition in this case, in a case where there was no physical forensic or eyewitness evidence connecting Jennifer Fletcher to the crime, the petition was prepared by a pro se inmate, a 39-year-old mother of three who, until this case arose, had never had any contact with the criminal justice system. There are two basic issues in Jennifer's appeal. One, did she, this pro se inmate, mother of three, do a good enough job to make clear that it was fundamentally unfair to allow a police officer to testify as the prosecution's first witness at trial that he didn't believe her? The second issue is whether she's entitled to relief as a result of the onslaught of testimony by law enforcement officers and others, offering their un-expert assessments of her credibility and her character, issues the state court did not resolve on the merits and therefore are not subject to AEDPA's strictures. As a third point, I will echo Mr. Fletcher's counsel's comments that there is a very significant case, not yet fully briefed before this Court, the most significant of which is that the trial court precluded Jennifer for presenting evidence corroborating her testimony, the testimony that Detective McCartan said he did not believe was that testimony, and it could have been corroborated. Instead, and let me just highlight when Ms. Dressner referred to the person asking for cigarettes, we have actually two, I think it's important to note that although she focused on the fact that there was one, there were in fact two people who were present in the area committing burglaries. And that although there was a discussion about that they were asking for cigarettes, in fact, the testimony was aggressively accosting people asking for cigarettes and law enforcement officers said that behavior is a way of approaching people, having an excuse to approach people to try and see whether or not you can break into their house or take advantage of them is not simply somebody with a nicotine habit. Do you agree with your colleague's comment or concession that unless we expand the COA, that as your client, even if we assume that the certified issue is incorporated by reference, that you'd lose, unless we expand the COA? I do not agree with that, Your Honor. We have a detective whose experience was. I don't think that's the question. The question is on this third-party defense, the third-party defense that you were talking about. Do you agree that that issue is not certified and that it would have to be further briefed? The third-party culpability has not been briefed. I apologize. I didn't say it right then. My question to you, and let me break it down into two parts. There's an issue as to whether your client's argument as to the certified issue is actually incorporated by reference. Right? Let's say you win on that. Okay. And then we reach the merits of that certified claim and say, well, it was incorporated by reference. We're going to reach the merits as to both defendants. Okay. Counsel's indicated that if we limit our review to just the certified issue, her client would lose. Do you agree with that? I do not agree with that. I'm not sure that she said she would lose. I think it's a weaker case, especially once you put it into the whole context. She doesn't want to rest on that. In this case, when we talk about a law enforcement officer who's not just a street cop, this is a detective with an extensive history, and he got up on the stand and talked about these high-profile cases that he had investigated and that he was the expert in lie detection. So when we're talking about him, of all people, as the prosecution's first witness, introducing, packaging the case, giving the jury a framework in which to understand this case, they're being told an expert has already told them and has already concluded everything that those people have to say, it's a lie. They lied to me before. And those aren't facts. Those are opinions. And those are wholly unsubstantiated opinions. The jury needs to make a decision based on facts and facts that are beyond or to the extent they get expert testimony. This is not a subject for expert testimony. And as the first witness, with his extended, with his extensive background that he went on and on about and the prosecution kept bragging about over objection because it was totally irrelevant. No, I certainly don't believe that this detective's statement that he didn't believe, that he thought my client, that both of the defendants were liars. No, I think that's highly prejudicial. What's the clearly established Supreme Court law that you think is contrary to or an unreasonable application of? Your Honor, my argument in there, in that response, is that this claim is not subject to the anti-terrorism, the AEDPA. So it's not subject to 2254d, the adjudication on the merits, and therefore it's not, it doesn't need to be established. Merely a matter of constitutional law like this Court used to address before. Why is it that it's not subject to AEDPA? Because the state court didn't rule on the merits? That is correct. The state court never ruled on the merits. Well, in fact, Mr. Adlai, that raises, I think, a threshold question. It certainly does. It's in the order issuing the COA as to whether or not your client's claim, I mean 2254 petition, included at all a claim about prosecutorial misconduct with respect to this detective, right? In other words, I think the state's position is you never raised that in the state. No, the state's position, no, it was clearly raised in state court. There is some ambiguity as to whether it was raised in federal court. In the 2254 petition. That is correct. And so what's your response to that part of the claim? It's similar, I think, to the exchange you just had with Judge Reinhart, right? So as to whether it's in the federal petition? Yes. Yes. Okay. So she put, as I started by, this is prepared by a pro se inmate who's at 39 years old, never had any interaction with the criminal justice system. She puts the heading of prejudicial, bad character, and innuendo evidence that violated her Fifth and Sixth Amendment rights.  Other people think Jennifer is guilty. And then she joins in all contentions raised by her co-petitioner, Matthew Fletcher. That is the substance of why this should be deemed included within her petition. I think it's very important to focus on the fact that she is cross-referencing a petition that was filed within one hour of her own. It was by her co-petitioner, who was her co-defendant at trial, who was her co-appellant on appeal. She was challenging the same state court judgment that ended up being assigned to the same magistrate judge and the same district judge. Federal Rule 10 expressly authorizes incorporation by reference. That is all she did. And it is perfectly acceptable. They are two individuals struggling with a very difficult procedural area of review. And I think they did the best they can. They didn't do what an attorney should have done, but I think they did the best they could, and that's why I believe it should be – I think it's unfair to penalize a pro se habeas petitioner who is serving life without parole for something as trivial as not being told at any point that her incorporation by reference, which is clear on the face of the petition, to claims. She is following – I will just add, she is following the advice. She is following the footsteps of what her appellate lawyer did. And I would just remind the Court that when the Supreme Court said that pro se inmates on habeas don't need a lawyer, they explained. It says, oh, they can just follow what their appellate lawyers did. And that's what she did here. She followed – that was Rossi Moffitt and Pennsylvania v. Finley. Both said that. But if there's any questions about procedural default or other issues – Okay. Thank you. Thank you, Your Honor. 20 minutes. Good morning, Your Honors. Deputy Attorney General Julie Harris for Respondent. May it please the Court. I guess I'll address the Matthew issues first, or I'm not sure exactly how the Court would like me to proceed. Well, you know all the issues. You can take them in whatever order you want. You can take the certified issues first, if you want, and then the uncertified or – Oh, I mean, I can address the uncertified just right now. I'm not prepared to discuss any uncertified issues. As this Court knows, there's no jurisdiction to decide any uncertified issues. And, of course, if this Court decided to expand the COA, we'd be happy to brief any – No, no, we'll give you a chance to brief them if we decide to answer them. I just wanted to give you a chance while you were here to answer them to the extent you can. If you can't, then we'll just rely on your brief if we expand it. I'm only prepared to say about them that the district court's determination that these claims were meritless was valid, but I'm not really prepared to discuss that here. All right. That's why I need – you don't – As I said, if we reach an uncertified issue, we'll give you the opportunity to brief it. Okay. The issue that's been certified on appeal in this case is narrow, as you've already heard from petitioners. The issue is whether the prosecutor committed misconduct when he asked Detective McCartan if he believed Petitioner and Jennifer's story. And the answer is no for four reasons. First, the Constitution does not prohibit a prosecutor from asking a witness if a suspect was being truthful when he was interviewed in the course of a criminal investigation. Second, this Court's cases U.S. v. Greer and U.S. v. Gaston, which hold that it's misconduct to ask a witness about another witness's veracity, arise out of this Court's supervisory powers and do not interpret the Constitution. Third, even if these supervisory cases did apply in the federal habeas context, these cases are distinguishable. First, in those cases in Greer and Gaston, the issue was commenting on the veracity of a trial witness, whereas in this case, the issue was commenting on the veracity of a suspect at the time he was interviewed, six years prior to trial. Moreover, a prosecutorial claim is evaluated at the time it occurs, and when this alleged error occurred, the prosecutor would not have known whether the defendant was actually going to testify at trial. And it doesn't really make sense to make a prosecutorial misconduct claim hinge on a defendant's decision to testify. In other words, a question that's properly asked does not become improper because of a subsequent act. Fourth, Petitioner opened the door to this line of questioning by Detective McCartan because he asked about Detective McCartan's investigative techniques and about whether he lied in interviews, which is constitutionally permissible. In addition, the jurors were... When you say the Petitioner opened the door, you're speaking of Petitioner Matthew? Yes, he represented himself pro se at trial, so yes, Petitioner opened the door. But the opening the door applies to both Petitioners? Applies to both, yes. So if Matthew opens the door, it binds Jennifer, is that what you're saying? Maybe her attorney would have to open the door in order for it to actually bind her. So maybe that's an argument that applies only to Matthew. Yeah. All right, go ahead. Okay. I mean, yes. I'm really only talking about Matthew right now. All right. In addition, the jury was instructed in this case that they were the sole decision makers in terms of witness credibility, and it doesn't make sense to think that they would believe they were supposed to defer to Detective McCartan's assessment of Petitioner from six years prior. Also, if we could just take a step back for a minute, the evidence that we're talking about that came in was that the police officer thought that Petitioner wasn't credible. This would have been obvious to the jury. Obviously, the jury would have understood that the police did not believe Petitioner and Jennifer's story because they arrested him. Even if this court found that an error occurred, any error would have been harmless, because there was abundant circumstantial evidence in this case that confirmed Petitioner's guilt. What was the abundant circumstantial evidence? I'm going to focus on four of the most compelling pieces, because really there is a large amount of circumstantial evidence in this case. But the pieces that I found the most compelling were, first, Petitioner admitted in jail that he killed a cop four years prior. Second, he showed consciousness of guilt when he lied about his alibi. Third, there was overwhelming evidence of motive, both financial and romantic. Jennifer and Petitioner were having a blatant affair. Okay, no, no, I understand that part. Oh, okay. They were having an affair. They got married shortly afterwards. Right. She constantly disparaged her husband. She said on at least ten occasions that she would get a million dollars if her husband were killed. Despite extreme financial instability, Jennifer reinstated the million-dollar policy just before her husband Joel's murder. And the claims adjuster involved in this case said he hadn't seen a police officer with that level of over-insurance in his 27 years in the business. In addition, Jennifer's mother, who discovered the victim's body and who dialed 911 in this case, said of Petitioner and Jennifer, how stupid are they to think they could get away with this? Those poor children are going to grow up to never know their parents. They're going to spend the rest of their lives in jail. She also said that she was sent to Oregon because the heat was on, and Petitioner and Jennifer were apparently rightly afraid she was going to talk too much and slip. Okay, good. I wonder what gave them that idea. Yeah, I don't know. To close, because Petitioner has already admitted that relief should only be granted on the larger claim of prosecutorial misconduct, he is conceding that... Well, I didn't quite say that. They said that it's a far weaker claim if it's just... Well, that's what Jennifer's counsel said, but Matthew's counsel, I believe, made a stronger statement about it. But you can follow up with her. He essentially concedes that he cannot win on the narrow issue that's certified before this court. For all these reasons, the district court's judgment should be affirmed. Thank you. Now, that's what? Matthew or both? That was Matthew. That's Matthew, right. Okay. Oh, you're going to now argue Jennifer separately? Yeah, I was going to argue Jennifer separately. That's the reason I asked that question. I wasn't sure, either. Go ahead. The claim that is at issue here was never before the district court. Petitioner, now I'm talking about Jennifer, never raised it, the court never ruled on it, and Petitioner, importantly, never objected in the objections that she filed in her report and recommendation that the court had failed to consider any claim, much less this prosecutorial misconduct claim that was in Matthew's petition. Moreover, the joinder statement that's at issue here that was in the concluding paragraph of a 119-page petition was not sufficient under Rule 2C of the rules governing federal habeas proceedings. Rule 2C requires that petitioners specify all grounds and supporting facts, and every district court that's considered this claim has found that this type of joinder language, which is, as petitioners have mentioned, a holdover from state court. But the rule doesn't say in so many words that you can't specify by incorporation, right? No, and in fact, the Dye v. Hoffbauer case anticipates that incorporation by reference is proper at some point, but that case says that you need clear and repeated references to a specific claim and that you have to attach an appended document, and none of those things happened in this case. In this case, we have one sentence at the end of a 119-page petition in which Petitioner says that she joins in her co-appellant's claims that accrue to her benefit, which really puts the onus on the district court to then go to a different docket and figure out which claims would somehow help this petitioner. And that's a significant burden to place on the district courts. Well, I understand that the district judge may have a burden. There's quite a burden also placed on a pro se petitioner to work her way through our abstruse habeas law. This court has said that even pro per petitioners must comply with Rule 2c. Yes, they have to comply with the rule. So your position is what, that it's waived because it was never raised in the district court? Is that what it amounts to? Essentially, yes. It's not, you know, on the state habeas, I think the court said there was a procedural default, right? But you're not invoking that on this appeal? No, because we're not even getting to the actual merits issue as to Jennifer because our position is that she never raised the claim and thus it's not properly before this court. But the point about her raising it on state habeas is significant because she knew how to raise this prosecutorial misconduct claim and she essentially abandoned it in federal court when she failed to raise it here. Wait a minute. You're saying there's evidence in the record from which you can infer that there was an intentional abandonment? Is that what you're saying? I'm saying that this court can infer and that she abandoned the claim by failing to include it in her federal habeas petition when she had previously included it in her state habeas petitions. And furthermore, that she knew how to make a claim like this and she decided not to. The other thing is, this claim really only arose once Petitioner realized that a certificate of appealability had been granted as to her husband's prosecutorial misconduct claim. And that's when this claim about the prosecutorial misconduct issue being in her original petition was first set forth. When did she get a lawyer? She got a lawyer not until she reached the Ninth Circuit. But a certificate of appealability had been denied and then there was a request to reopen that after the certificate of appealability had been granted as to Matthew. And then at the point that the COA was granted as to Jennifer, this court appointed an attorney for her. That was on her motion for reconsideration, right? Yes. The denial of the COA. Right. But the claim just seems really convenient now to say that the prosecutorial misconduct claim was in her original petition when all evidence about that points to the contrary. Was she affected basically the same way by the prosecutorial misconduct? Yeah, the same type of evidence came out. Let's assume that the husband prevails on the prosecutorial misconduct claim and she has the same claim. You think the proper result would be to vacate his trial, his conviction, and let her spend life without parole in prison because she didn't clearly raise the identical claim? I think that if this court really feels that the prosecutorial misconduct claim is meritorious, then perhaps it would be in the interest of justice to allow her to raise it. But because this claim is clearly meritless, there's no point in breaking the rules for this petitioner. There's no point worrying about the procedural claim too much if it's meritless anyway. True. For all these reasons, the district court's judgment as to Jennifer should also be affirmed. Thank you. Your Honor, my position with regard to the scope of the Certificate of Appealability is that this court cannot take a claim that Mr. Fletcher raised and then turn it into something different. He wrote in his habeas petition, and this is at the excerpts of record at page 520, his heading was, That was his claim. Underneath that claim, he wrote, By use of questions, innuendo, and by giving unsworn testimony, the prosecutor throughout the trial improperly asked witnesses to give testimony and to ask their opinions as to the truthfulness and veracity. Let me ask this question, Ms. Pressner. If we agreed with you that that's his claim, still the COA, right, is much narrower, right? That's what the COA says. So if we're going to consider the rest of that same overall claim, do we have to expand the COA and then give the State an opportunity to respond? I don't answer two different answers. I don't believe the COA needs to be expanded. I think the COA needs to be read as having incorporated the entirety of that claim because my very next line I was going to read is in Mr. Fletcher lists nine examples of what he has just stated, and that is just the first of the nine examples. And then he goes on to give additional examples. And so I'm not sure how it is that the COA ---- Kennedy, but look how narrow it is, right? The request is granted with respect to the following issues, singular, whether the prosecutor committed misconduct by asking McCartan whether he believed the appellant Jennifer Story. That's it. But I don't believe that there's any basis for this court to issue a COA on an issue that Mr. Fletcher didn't raise. There may be no basis for doing it, but we did it. Well, and so the only way to remedy what was a wrong grant of a too narrow COA that isn't compliant with what Mr. Fletcher's request would be would be to read it. But you're answering my earlier question saying, no, there's no need to expand the COA. Well, I say there's no need to, but I'm okay whichever way the court resolves it, whether they read this expansively or they extend the COA, it would not be fair to Mr. Fletcher to only consider this one tiny, tiny part of his claim. No, I understand that. With that part we understand. What Judge Tachema was saying is if we agree with you that it should have been a broader COA, then aren't we expanding it? And then doesn't the State get a chance? I have no objection to allow ---- I mean, I believe it should have been read expansively, but I have no objection to allowing the Respondent to address the merits. It's not been addressed and made it hard to do a reply brief because it was so ---- We'll worry about straightening out the briefing problem if we expand the COA. I have no objection to it. I have not conceded that he can't win on that. I just ---- my argument is it is such a ---- it's a tip of the iceberg of a much larger prosecutorial misconduct claim, and it does not a good service to Mr. Fletcher to narrow it. And, in fact, if the Court believed, the panel that granted this believed, that that was worthy of a COA, if the small part of it is, then how can the whole claim not be worthy of a COA? Thank you.  Roberts. Without addressing anything else, I would just say that ---- so let me start with one of the questions. How would it affect Jennifer as opposed to Matthew? I'll just reiterate what Judge Toshima read from the COA. It was that Detective McCartan said he disbelieved Jennifer. He disbelieved ---- Jennifer is the one that he said was a liar. So that is a spillover for Matt. The fact that the detective might be able to say that there are conflicts in the statement, that he identified one statement here and another, is totally different from saying he disbelieves somebody. He concluded that they were a liar. There are many reasons that people might have conflicts or make mistakes. The fact that they were arrested does not suggest that the police disbelieved her or disbelieved anything. There was probable cause for arrest. The prosecution made a decision to bring it to trial. That is not a statement of ---- on credibility. On the procedural issues for Mrs. Fletcher, the Court did ---- the district court did in fact rule on this claim. And as far as the objection, Mrs. Fletcher did file an objection. And she said the district court ignored the mountains of evidence. I think Judge Toshima is right. There is no evidence of an intentional abandonment. What she did was put together a gargantuan ---- I think we understand those things. I would just add, as far as the, quote, overwhelming evidence, what you didn't find, what you didn't hear was anything connecting them directly to this murder. What you did hear was disputed evidence that the jury didn't even get a second ---- the other side of. Everything she read was either disputed or taken out of context. And even the level of insurance was a disputed issue. There was plenty of evidence that this ---- that Joel, who sold insurance, thought he had $1.4 to $1.9 million of insurance. He always wanted more than $1 million of insurance. And he actually didn't even have that much. Thank you, counsel. Thank you, Your Honor. Cases just argued will be submitted.
judges: Reinhardt, Tashima, Nguyen